Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TRACY A. CHAPMAN, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 17-5561 (ES) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is Tracy A. Chapman's ("Plaintiff") appeal of Administrative Law Judge Nicholas Cerulli's ("ALJ") decision denying Plaintiff's application for Social Security disability benefits under Titles II and XVI of the Social Security Act ("SSA" or "Act"). (D.E. No. 1). The Court has considered the parties' submissions and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons below, the Court AFFIRMS the Commissioner of Social Security's ("Commissioner") decision.

**I.   Background**

Because the Court writes primarily for the parties, the Court provides background summarily. On February 7, 2012, Plaintiff filed Title II and XVI applications for disability benefits, alleging disability from conditions including "Lumbar Degenerative Disc Disease, Scoliosis, Osteoarthritis o[f the] Right Knee, Status Post Arthroscopic Repair of Torn Medial Meniscus, Hypertension, Depression and Anxiety. . . ." (D.E. No. 1 ¶ 6; D.E. No. 5, Administrative Record ("R.") at 79 & 80). These claims were initially denied on May 20, 2013, and again upon reconsideration on July 12, 2013. (R. at 108, 114, 120 & 122).

Plaintiff requested a hearing before an ALJ, which was held on June 19, 2015. (*Id.* at 11 & 128). The ALJ issued denied SSDI and SSI benefits on January 20, 2016, and Plaintiff sought review of that unfavorable decision with the Appeals Council on March 30, 2016. (*Id.* at 8 & 175). After the Appeals Council declined review on May 26, 2017, Plaintiff filed the instant appeal. (*Id.* at 1; D.E. No. 1).

**II.     Legal Standard**

    **A.     Standard for Awarding Benefits**

To be eligible for SSDI or SSI, a claimant must establish that she is disabled as defined by the Act. *See* 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." *Id.* § 423(d)(1)(A). A claimant's physical or mental impairment must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.*

The Act has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). If at any point in the sequence the Commissioner determines that the Plaintiff is or is not disabled, the Commissioner holds so, and the inquiry ends. *See id.* The burden rests on the claimant to prove Steps One through Four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[1] At Step Five, the burden shifts to the Commissioner. *Id.*

---

[1]     Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

- 2 -

At Step One, a claimant must demonstrate that she is not engaging in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. *Id*. §§ 416.972(a) & (b). If a claimant demonstrates she is not engaging in substantial gainful activity, the analysis proceeds to the second step.

At Step Two, a claimant must demonstrate that her alleged impairment or the combination of his impairments is "severe." *Id*. § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. *Id.* § 404.1520(c). If a claimant has a severe impairment, the analysis proceeds to the next step.

At Step Three, an ALJ must assess the medical evidence and determine whether a claimant's impairment or combination of impairments meets or equals an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Upon a finding that a claimant meets or equals a listing, a claimant is presumed to be disabled and is automatically entitled to benefits. *Id.* § 416.920(d).

If a claimant is not found to be disabled at Step Three, the analysis continues to Step Four, in which the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If a claimant lacks the RFC to perform any work he has done in the past, the analysis proceeds to the final step. *See id.* § 416.920.

In the final step—Step 5—the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his RFC and vocational factors. *Id.* § 404.1520(a)(4)(v). If the Commissioner finds that the

claimant can perform jobs that exist in significant numbers in the national economy, disability benefits will be denied. *See id.*

B.  **Standard of Review**

The Court applies plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence." *See* 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Thus, the Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit has noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his

analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

## III. The ALJ Decision

In his January 20, 2016 decision, the ALJ found that Plaintiff had last met the insured status requirements of the Social Security Act on December 31, 2013. (R. at 13). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on October 24, 2012. (*Id.*).

At Step Two, the ALJ found that Plaintiff had the severe impairments of lumbar degenerative disc disease, scoliosis, osteoarthritis of the right knee, and status post arthroscopic repair of torn medial meniscus. (*Id.*). In reaching the finding, the ALJ determined that "the documented medical evidence of record . . . when considered in the aggregate" evidences "significant limitation on [Plaintiff's] ability to perform work activities" during the relevant period. (*Id.*). The ALJ also found evidence of hypertension, depression, and anxiety disorder, but that those impairments were not severe. (*Id.* at 14). The ALJ supported the hypertension finding with clinical data from physician Agatha Franck, and with the lack of evidence on the record of "any manifestations from her hypertension such as cardiovascular disease, stroke, [] myocardial infraction. . . . [or] treatment in the emergency room due to hypertensive crisis." (*Id.*). Regarding depression and anxiety, "[Plaintiff] did not testify that she has any mental impairments." (*Id.*).

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed by the regulations. (*Id.*). Plaintiff's attorney did not contend otherwise. (*See id.*). Nevertheless, the

ALJ considered Listing 1.02, major dysfunction of a joint, and Listing 1.04, disorders of the back, of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (*Id.* at 14-15).

Finally, at Step Four, the ALJ found that Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (*Id.* at 15). The ALJ concluded that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible." (*Id.* at 17). Citing to pre- and post-operative MRIs, the treatment notes of physicians Mark Reiner, Agatha Franck, Gerald Dworkin, Mignon D'Guerra, and Scott Sharetts, and the treatment notes of physical therapist Amanda Zimmerman, the ALJ concluded that "the paucity of [corroborating] treatment notes" undermines Plaintiff's credibility regarding the symptoms. (*Id.* at 17-18). Specifically, the ALJ determined:

> Although the claimant has reported that her pain has been severe, diagnostic imaging tests have not demonstrated evidence of spinal stenosis, nerve root impingement, or radiculopathy. There is also no evidence of sensory loss, or reflex loss. The claimant merely briefly attended physical therapy, and has not returned since March 2013. There is no evidence that she has participated in various other treatment modalities such as chiropractic treatment, or the use of a TENS unit. Although the claimant has been prescribed a cane, none of the treatment notes in the record document that it is medically necessary for the claimant to ambulate. The claimant has sought treatment sporadically, and there is no evidence that she has returned for any treatment since March 2015. Moreover, the claimant's testimony regarding the side effects from her medications is not documented in any of her treatment notes.

(*Id.* at 18). The ALJ also determined that the information Plaintiff provided on an Adult Functional Report contradicted her testimony at the hearing that her impairments severely restricted her functional ability. (*Id.*). On the Adult Functional Report, Plaintiff indicated that

"she had no problems with her personal care, can sometimes prepare complete meals, cleans and washes laundry, and shops in stores for clothes and food." (*Id.*). Such a generally normal range of functional abilities, the ALJ found, was inconsistent with a disability finding. (*Id.*).

The ALJ then goes on to explain in detail how much relative weight he afforded to each source of opinion evidence. (*See id.* at 19-21). Regarding Dr. Agatha Franck, the ALJ gave little weight to her opinion that Plaintiff could not work on a full-time basis because the opinion was inconsistent with (i) diagnostic imaging studies indicating that Plaintiff had no spinal stenosis, nerve root impingement, or radiculopathy; (ii) Dr. Scott Sharetts's treatment notes that Plaintiff's strength in the lower extremities was appropriate, her reflexes were symmetrical, and she had no lateralized sensory deficit; and (iii) Dr. Gerald Dworkin's treatment notes that Plaintiff had pain-free range of motion at the hip and had no focal motor weakness. (*Id.* at 19). The ALJ gave little weight to certain evidence from Dr. Mignon D'Guerra and physical therapist Amanda Zimmerman for similar reasons. (*See id.* at 19-20). The ALJ gave some weight to "State agency medical consultant[s]" Dr. Harpreet Khurana and Dr. Mary McLarnon, who indicated that Plaintiff retained the ability to perform the full range of light work on a regular and continuing basis. (*Id.* at 20). While recognizing that treating source opinions may be entitled to controlling weight and in any event cannot be disregarded (*id.* at 19), the ALJ concluded:

> Considering the numerous inconsistencies between the claimant's testimony, the evidence of record, and the medical findings of the treating physicians, the undersigned finds that the claimant's subjective complaints and alleged limitations are not fully persuasive and that the claimant retains the ability, despite her limitations, to perform work activities with the limitations set forth above.

(*Id.* at 21).

The ALJ then determined that Plaintiff could perform past relevant work as a deli slicer and as a dietary aide. (*Id.*). Accordingly, the ALJ held that Plaintiff has not been under a

disability as defined by the Act from October 24, 2012 through the date of his decision. (*Id.* at 21).

IV.  **Discussion**

Plaintiff bases her appeal on two primary arguments, both related to the way the ALJ determined RFC. (*See generally* D.E. No. 9, Plaintiff's Brief Pursuant to Local Rule 9.1 ("Pl. Mov. Br."); *see also generally* D.E. No. 14, Plaintiff's Reply Brief). First, Plaintiff argues that the ALJ erred in affording little weight to the opinions of her treating physicians Agatha Franck and Mignon D'Guerra and her physical therapist Amanda Zimmerman. (Pl. Mov. Br. at 16-22). Second, Plaintiff argues that the ALJ did not perform a function-by-function analysis of Plaintiff's exertional limitations and did not consider Plaintiff's non-exertional limitations in the RFC formulation. (*Id.* at 22-29).

A.  **The Opinion Evidence**

Plaintiff states that Social Security Ruling 96-2p, in effect during the relevant time, requires a treating source's medical opinion to be given controlling weight if it is "well-supported and not inconsistent with other substantial evidence on the record." (*Id.* at 16). Plaintiff states that the ALJ rejected Agatha Franck's opinions because they "were inconsistent with the doctor's own treatment notes and the treatment notes of Drs. Sharetts and Dworkin." (*Id.* at 17). Plaintiff argues "the ALJ failed to address substantial evidence in these records which support Dr. Franck's opinions," such as treatment notes on pain in the right knee and spine, and other clinical indicia of disability like abnormal spine appearance and positive straight leg raise testing results. (*Id.* at 17-18). Plaintiff argues "the case law is clear that an ALJ is required to consider all the relevant evidence and provide an explicit rationale for rejecting probative evidence," and consequently, the ALJ "failed to provide the reasoning required by

[case law]." (*Id.* at 18-19).

Plaintiff asserts similar arguments for physician Mignon D'Guerra and physical therapist Amanda Zimmerman. (*See id.* at 19-21). Regarding Amanda Zimmerman, Plaintiff also argues that the ALJ "substituted his own lay opinion as to what symptomology would or would not be consistent with . . . Plaintiff's diagnostic imaging." (*Id.* at 21).

The Court finds Plaintiff's arguments unpersuasive. An "ALJ must weigh the credibility of the medical and non-medical evidence before [her]" in determining RFC. *Yensick v. Barnhart*, 245 F. App'x 176, 181 (3d Cir. 2007) (citing *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); *Burnett*, 220 F.3d at 122). So that appellate courts can discharge their duty of determining whether a conclusion is supported by substantial evidence, an ALJ must explain her conclusion "as comprehensive[ly] and as analytical[ly] as possible and should include a statement of the facts in support." *Id.* (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

The Third Circuit has clarified that although medical evidence in the form of "an opinion by a claimant's treating physician is entitled to substantial and sometimes controlling weight," the treating physician must support her opinion "by acceptable medical diagnostic techniques and be consistent with other substantial evidence in the case to be afforded greater or controlling weight." *Id.* (citing *Fargnoli*, 247 F.3d at 41; 20 C.F.R. § 404.1527(d)(2)). Where inconsistent or contradictory medical evidence exists in the record, an ALJ may accept the most credible medical opinion, including ones provided by non-treating, non-examining physicians. *Id.* (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

This is precisely what the ALJ has done. The record contained inconsistent medical evidence regarding Plaintiff's alleged disability, which the ALJ noted. (*See* R. at 21 ("Considering the numerous inconsistencies between the claimant's testimony, the evidence of

record, and the medical findings of the treating physicians, the undersigned finds . . . that the claimant retains the ability, despite her limitations, to perform work activities with the limitations set forth above."); *id.* at 19-20 (describing inconsistencies among the treatment providers and between the treatment providers and the State's medical consultants)). The Court finds this ALJ conclusion supported by substantial evidence. (*Compare, e.g.*, *id.* at 62-63 (Dr. Harpreet Khurana concluding that Plaintiff has a RFC for light work, that Plaintiff was not disabled, and that Plaintiff's "statements regarding severity of symptoms and functional limitations are not fully supported by totality of evidence on file"), *and id.* at 88 (Dr. Mary McLarnon agreeing with Dr. Harpreet Khurana's assessment), *with id.* at 357 (Dr. Agatha Franck concluding that Plaintiff could not work for a period of one month; and was limited with respect to standing, walking, and climbing, but not stooping bending, lifting, or use of hands), *and id.* at 387 (Dr. Mignon D'Guerra concluding that Plaintiff could not work for a period of one year; and was limited with respect to standing, walking, climbing, stooping, bending, and lifting, but not use of hands)). Thus, it was within the ALJ's discretion as a fact finder to afford only some weight to treating source opinions, if he adequately explained his reasoning. *See Yensick*, 245 F. App'x at 181.

And the ALJ did adequately explain his reasoning. For example, the ALJ provided the following explanation with respect to Agatha Franck:

> Dr. Franck, the claimant's treating physician, opined on March 14, 2013, that the claimant was limited in her ability to stand, walk and climb (Exhibit 6F). She concluded that the claimant was unable to work on a full time basis, but noted that she can participate in classes for 4-5 hours daily. Dr. Franck opined on April 12, 2014, that the claimant could lift and carry 20 pounds frequently, could sit for less than 4 hours, and stand/walk for less than 4 hours in an 8 hour workday (Exhibit 9F). Dr. Franck opined further that the claimant would be off task 10% of the workday due to her impairments. Little weight is assigned to Dr. Franck's opinion, as it is inconsistent with the objective medical evidence and record as a whole. In particular, Dr. Franck's opinion is inconsistent with

> her treatment notes which reported that the claimant had 5/5 strength in her lower extremities, intact reflexes bilaterally, and had negative straight leg-raising (Exhibit 6F). Dr. Franck's opinion is inconsistent with the diagnostic imaging studies which indicate that the claimant has no spinal stenosis, nerve root impingement or radiculopathy. Dr. Franck's opinion is inconsistent with Dr. Sharetts's treatment notes which stated that the claimant's strength in the lower extremities was appropriate, reflexes were symmetrical and had no lateralized sensory deficit (Exhibit 15F). Dr. Franck's opinion is inconsistent with Dr. Dworkin's treatment notes which reported that the claimant had pain free range of motion at the hip and had no focal motor weakness (Exhibit 7F).

(R. at 19). The Third Circuit has "stated that in most cases, a sentence or a short paragraph will probably suffice to support an ALJ's decision" on the weight given to certain medical testimony. *Sponheimer v. Comm'r of Soc. Sec.*, 734 F. App'x 805, 807 (3d Cir. 2018) (citing *Cotter*, 650 F.2d at 482) (cleaned up). For treating physicians Agatha Franck and Mignon D'Guerra and physical therapist Amanda Zimmerman, the ALJ has provided more than "a sentence or short paragraph" explaining the reasons he gave the relative weight to each opinion. (*See* R. 19-20). The ALJ also supported each explanation by citing to objective medical evidence in the record.[2] (*See id.*). These explanations are enough for the Court to hold that the ALJ did not withhold controlling weight from the treating opinions "for no reason or for the wrong reason." *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

---

[2] The ALJ did not provide a citation to the record to support his finding that "the diagnostic imaging studies . . . indicate that the claimant has no spinal stenosis, nerve root impingement or radiculopathy." (*See* R. 19-21). Plaintiff contends that this finding was in error because it constitutes the ALJ "substitut[ing] his own lay opinion as to what symptomology would or would not be consistent with the Plaintiff's diagnostic imaging." (Pl. Mov. Br. at 22). This ALJ factual conclusion does find some support in the record. (*See, e.g.*, R. at 263). But even if that finding fails the substantial evidence standard, the error is harmless because the ALJ cited other objective medical evidence sufficient for him to afford less weight to the treating physicians' opinions. (*See id.* at 19-20); *Perkins*, 79 F. App'x at 515. Moreover, the ALJ was not "substitut[ing] his own lay opinion as to what symptomology would or would not be consistent with the Plaintiff's diagnostic imaging," as both Dr. Harpreet Khurana and Dr. Mary McLarnon concluded that Plaintiff's "statements regarding severity of symptoms and functional limitations [were] not fully supported by totality of evidence on file," the evidence on file included diagnostic imaging, and Dr. Harpreet Khurana and Dr. Mary McLarnon relied on the diagnostic imaging to support their RFC assessments. (*See* R. at 59-78 & 81-102).

To the extent Plaintiff contends that the ALJ erred by failing to address substantial evidence in the record that supports the treating physicians' or physical therapist's opinions, the Court rejects those contentions. (*See, e.g.*, Pl. Mov. Br. at 17-18). As discussed, the ALJ, faced inconsistent medical evidence regarding Plaintiff's alleged disability, weighed the credibility of the medical opinions and afforded only some weight to certain opinions. Accordingly, it was not necessary for the ALJ to discuss and dismiss every datum unfavorable to his findings for this Court to uphold those findings. *See McCrea*, 370 F.3d at 360 (Substantial evidence requires "more than a mere scintilla" but "it need not rise to the level of a preponderance."); *Williams*, 970 F.2d at 1182 (A court is limited in its review of unfavorable disability determinations because the court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder"— the ALJ.).

In sum, the Court finds that ALJ did not err in his treatment of the opinion evidence.

**B. The Alleged Failure to Perform a Function-by-Function Analysis or Address Non-Exertional Limitations**

Plaintiff argues that the "ALJ [erred by] fail[ing] to perform a function-by-function analysis, and failed to state the amount of time the Plaintiff could stand, walk, and sit, and the amount of weight she could regularly lift and carry." (Pl. Mov. Br. at 23). Plaintiff also argues that the ALJ erred by failing to address numerous non-exertional limitations on the record, namely limitations regarding the use of a cane and being "off task" for a portion of the day. (*Id.* at 27-29).

The Court rejects these arguments. Although the ALJ opinion does not explicitly lay out function-by-function analysis or specify the amount of time the Plaintiff could stand, walk, and sit, and the amount of weight she could regularly lift and carry, the record makes clear that the ALJ performed a function-by-function analysis and considered any functional limitations. For

example, the ALJ at the hearing questioned Plaintiff on her functional capacities and on the work she performed in her previous jobs. (R. at 38-53). Afterward, the vocational expert confirmed that the ALJ's questioning was sufficient for her to provide an expert opinion. (*Id.* at 40). The vocational provided the ALJ with classifications for each of Plaintiff's past relevant work experiences, both in terms of how she performed it and in terms of it is generally performed in the national economy. (*Id.* at 53-54). Before questioning the vocational expert on the ability of a hypothetical individual to perform Plaintiff's past relevant work, the ALJ instructed:

> Please assume a hypothetical individual of [Plaintiff's] age, education and past relevant work experience who has the following residual functional capacity, light work, occasional pushing and pulling with the right lower extremity, occasional climbing, balancing, stooping, kneeling, crouching and crawling, occasional overhead reaching. Avoid concentrated exposure to hazards, such as unprotected heights and moving machinery. Please further assume that the individual could do unskilled work involving routine and repetitive tasks with occasional changes in the work setting.

(*Id.* at 54). After the vocational expert provided her opinion that Plaintiff could perform past relevant work, the ALJ questioned the vocational expert on whether the Dictionary of Occupational Titles takes the functional limitation of overhead reaching into account. (*Id.* at 55). Courts do not require more than what the ALJ has done to satisfy the function-by-function analysis requirement. *See Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008) (holding that the ALJ satisfied the function-by-function analysis requirement where the ALJ specifically questioned the plaintiff as to the work she performed in her previous jobs and it was apparent that the ALJ took the answers and plaintiff's functional limitations into account in the RFC analysis).

Regarding Plaintiff's contention that the ALJ erred by failing to address the non-exertional limitations of the use of a cane and being "off task" for a portion of the day, the ALJ

questioned the vocational expert on how the non-exertional limitations of using a cane and being "off task" for more than ten percent of the workday would affect her analysis. (R. at 55-56). The ALJ stated in his opinion that he had "considered the effects of the claimant's back and right knee pain and her credible limitations in assigning a light residual functional capacity." (*Id.* at 18). The ALJ also stated in his opinion that "[a]lthough the claimant has been prescribed a cane, none of the treatment notes in the record document that it is medically necessary for the claimant to ambulate." (*Id.*). As discussed above, the ALJ was entitled to make a credibility determination of the objective medical opinion evidence and afford only some weight to certain opinions. Moreover,

> When evaluating a claimant's symptoms, an ALJ should evaluate the intensity and persistence of the symptoms, such as pain, and determine the extent to which the claimant's symptoms limit his or her capacity for work. To do this, an ALJ should rely on "objective medical evidence" and "other relevant evidence" to evaluate the extent that the alleged symptoms limit the claimant's ability to do basic work activities. Other relevant evidence includes precipitating or aggravating factors, symptoms, medication and treatment, and daily activities. [An] ALJ [can] quite properly discount subjective complaints that [are] not otherwise supported by the record.

*Sponheimer*, 734 F. App'x at 808 (citing 20 C.F.R. § 404.1529(c); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999)). The ALJ thoroughly adhered to this Third Circuit guidance in his evaluation of Plaintiff's symptoms. (*See* R. 15-18). Finally, this Court is particularly disinclined to reverse or remand an ALJ's unfavorable determination because of failure to assign a use-of-a-cane limitation where Plaintiff has represented that she requires a cane to ambulate and uses a cane "all the time," but where Plaintiff attended her disability interview at the Field Office without a cane or crutches. (*See id.* 207 & 237).

After a full review of the record, this Court holds that the ALJ's unfavorable determination is supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision. An appropriate Order accompanies this Opinion.

<u>*s/Esther Salas*</u>
**Esther Salas, U.S.D.J.**